(Post 11/2015)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
_____Central_____ **DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 0 8 2021

* **TAMMY H. DOWNS, CLERK**
By:_____ **DEP CLERK**

John H Lovelace Jr.

_____

_____
(Name of plaintiff or plaintiffs)

v.

CIVIL ACTION NO. 4:21-cv-614-KGB
(case number to be supplied by the assignment clerk)

S&D Coffee and Tea

_____

_____
(Name of defendant or defendants)

This case assigned to District Judge _Baker_
and to Magistrate Judge _Volpe_

**COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.    Plaintiff, _John H. Lovelace Jr._, is a (name of plaintiff) citizen of the United States and resides at _18 W Windsor Drive_, (street address) _Little Rock_, _Pulaski_, _Arkansas_, _72209_ (city) (county) (state) (ZIP) _501-913-8083_. (telephone)

3.    Defendant, _S&D Coffee and Tea_, lives at, or its (name of defendant) business is located at _1601 Gregory Street, North Little Rock_, (street address) (city) _Pulaski_, _Arkansas_, _72114_. (county) (state) (ZIP)

4.    Plaintiff sought employment from the defendant or was employed by the

defendant at __1601 Gregory Street, North Little Rock__,
(street address)                                    (city)
__Pulaski__, __Arkansas__, __72914__.
(county)        (state)        (ZIP)

5.    Defendant discriminated against plaintiff in the manner indicated in paragraphs 9

and 10 of the complaint on or about __09__ __25__ __2020__.
(month)   (day)   (year)

6.    Plaintiff filed charges against the defendant with the Equal Employment

Opportunity Commission charging defendant with the acts of discrimination indicated in

paragraphs 9 and 10 of this complaint on or about __01__ __14__ __2021__.
(month)   (day)   (year)

7.    The Equal Employment Opportunity Commission issued a Notice of Right to Sue

which was received by plaintiff on __04__ __08__ __2021__, a copy of which notice
(month)   (day)   (year)

is attached to this complaint.

8.    Because of plaintiff's (1) __✓__ race, (2) __✓__ color, (3)_____ sex,

(4) _____ religion, (5) _____ national origin, defendant:

(a) _____ failed to employ plaintiff.

(b) __✓__ terminated plaintiff's employment.

(c) _____ failed to promote plaintiff.

(d) __deformation of character making a false__
__claim.__
_____
_____
_____
_____

9.    The circumstances under which the defendant discriminated against plaintiff were

as follows: I recieved a call on the 25th of september from Ryan. He told me I was late the first day and on another ocassion I was told by him to go to lunch at 12:20 and take an hour. He stated I was late for a meeting and getting back from lunch. I was not, but he terminated me any way. After I filled with the eeoc they made up a new point saying I was sleeping on the job. This never happened

10.    The acts set forth in paragraph 9 of this complaint:

    (a) _____ are still being committed by defendant.

    (b) _____ are no longer being committed by defendant.

    (c) ____✓____ may still be being committed by defendant.

11.    Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission which charges are submitted as a brief statement of the facts supporting this complaint.

    WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

    (a) _____ Defendant be directed to employ plaintiff, and

    (b) _____ Defendant be directed to re-employ plaintiff, and

    (c) _____ Defendant be directed to promote plaintiff, and

    (d) ___✓___ Defendant be directed to Pay a settlement to John Loudso Jr.

and that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

_____
SIGNATURE OF PLAINTIFF

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | John H. Lovelace, Jr.<br>18 W Windsor Drive<br>Little Rock, AR 72209 | From: | Little Rock Area Office<br>820 Louisiana<br>Suite 200<br>Little Rock, AR 72201 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2021-00344 | **Margie Myers,**<br>**Investigator** | **(501) 324-6214** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

| | 04/08/2021 |
|---|---|
| **William A. Cash, Jr.,**<br>**Area Office Director** | *(Date issued)* |

Enclosures(s)

cc:     **Leslie Eagle**
**VP of HR**
**S&D Coffee Inc.**
**PO Box 1628**
**Concord, NC 28026**

*AAS578C+543656924202177921*

## ARKANSAS DIVISION OF WORKFORCE SERVICES
### NOTICE OF AGENCY DETERMINATION

JOHN H LOVELACE
18 W WINDSOR DRIVE
LITTLE ROCK  AR  72299

Mailing Date Of Notice: 6/21/2021
Local Office No:          00130
Initial Claim:            02/01/2021
SSN:***-**-6345          BYQ:20211

S & D COFFEE INC
P O BOX 283
ST LOUIS  MO  63166

**FINDING OF FACTS:**  The claimant was discharged from the job on 09-22-21 due to alleged misconduct related performance.  The employer failed to provide sufficient information to substantiate this allegation.

**DECISION:**  Not disqualified. ***Importante: Este documento(s) contiene información importante acerca de su derecho de compensación por desempleo, responsabilidades y/o beneficios. Es muy importante que usted entienda la información contenida en este documento. Si necesita ayuda en la traducción y comprensión de esta información, por favor repórtese a su oficina local de inmediato. Si usted no está de acuerdo con esta determinación o decisión, debe presentar una apelación antes del plazo límite especificado en la determinación o decisión.

**LAW:**  ACA §11-10-514(A) provides that an insured worker will be disqualified from receiving benefits if he or she is discharged from his or her last work for misconduct in connection with the work. Misconduct includes, without limitation, the disregard of an established bona fide written rule known to the employee or a willful disregard of the employer's interest.

**APPEAL RIGHTS:**  ACA §11-10-524(A) provides that a party entitled to this notice may file an appeal within 20 calendar days after the mailing of the notice to his last known address. An appeal may be filed by either completing a written appeal form (which may be obtained from any Division of Workforce Services Office or at https://www.dws.arkansas.gov/unemployment/appealing-ui-determination/) or by writing to the Arkansas Appeal Tribunal, P.O.Box 8013, Little Rock, AR 72203. Please attach a copy of this form to the appeal letter and continue to file weekly claims to protect your benefit rights. All correspondence relating to an appeal should include the claimant's Social Security number. More information regarding the unemployment insurance program may be found in UI handbook, at www.dws.arkansas.gov or the local office listed below.

TIMELY :        Y
514A0X00
CLAIMANT COPY

FAX: 501-682-7797   PHONE: 501-682-8030
DIVISION OF WORKFORCE SERVICES
P.O.BOX 4970
LITTLE ROCK, AR 72209

*** Servicios de Interpretación/Traducción disponibles por medio de su oficina local. --- Ewōr Jerbal in ukok ikijien jeje im kennaan ilo opij ko ijo kwoj pād ie.
--- Các Dịch Vụ Thông Dịch/Phiên Dịch có sẵn qua văn phòng địa phương của quý vị. --- ຫ້ອງການບໍລິການແປພາສາມີພ້ອມໃຫ້ບໍລິການນຳທ່ານຜ່ານທາງຫ້ອງການຂອງທ່ານ
--- Interpretation/Translation services available through your local office.***



**Arkansas Division of Workforce Services**

PO Box 2981
Little Rock, AR 72203-2981

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300





1154 1 AB 0.428
4*2****ALL FOR AADC 720
JOHN H LOVELACE
18 W WINDSOR DRIVE
LITTLE ROCK, AR  72209-2029



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Little Rock Area Office**

820 Louisiana St., Suite 200
Little Rock, AR  72201
Little Rock Status Line:  (866) 408-8075
Little Rock Direct Dial:  (501) 324-5060
FAX (501) 324-5991
Website:  www.eeoc.gov

John H. Lovelace, Jr.
18 W Windsor Drive
Little Rock, AR 72209

Re:     John H. Lovelace, Jr. v. S & D Coffee and Tea, Inc.
         EEOC Charge No.  493-2021-00344

Dear Mr. Lovelace:

The enclosed Notice terminates our processing of your charge and gives notice of your right to sue within 90 days. On March 12, 2021, a copy of the Respondent's Position Statement was released to you through the Commission's public portal. After receiving your March 31, 2021, response, all evidence collected during the investigation was thoroughly reviewed.  Based upon its investigation, the Commission is unable to conclude the information obtained establishes violations of the statutes enforced by the Commission. The investigation revealed the following facts.

You alleged you were discharged because of your race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The evidence shows your first day of employment was September 9, 2020.  The Respondent provided a copy of a September 2, 2020, email from Ryan Ciak to johnlovelace44_6yr@indeedemail.com.  Included in the email is the following information: "Training will be facilitated from 8:00 am to 5:00 pm, each day. Please plan to arrive by 7:50 am. We will begin training at 8:00 am."  By email dated September 2, 2020, johnlovelace44_6yr@indeedemail.com responded, "Thank you! I am very excited to join the team!"  On September 9, 2020, you arrived at approximately 8:25 am.

The Respondent provided a copy of a September 18, 2020, (1:00 am until 2:00 pm) meeting notification sent to you and Coworkers.  The Respondent also provided information showing you "accepted" the invite. You arrived at approximately 1:23 pm.

The Respondent provided information indicating that two (2) Client Experience Leads, Coworkers, and a Company Senior Vice President witnessed you falling asleep during two meetings (September 9, 2020 and September 11, 2020).

Your witness statement from Loretta Dumas states, "I do not recall John sleeping during the meeting." It does not state you did not sleep during this or other meetings.

No further action will be taken by this office regarding your Charge of Discrimination. The District Director's determination in this matter is attached. This determination concludes the processing of the charge by the EEOC, but does not affect your right to sue on your own behalf. You may pursue the matter by filing in Federal District Court as explained in the Dismissal and Notice of Rights and the Information Sheet.

Sincerely,

*Margie Myers*

Margie Myers
Investigator

04/08/2021
Date
Enclosure (Form 161 w/attachments)

When I was hired by S&D Coffee
I already had a job. If the first
day was a problem, I could have
stayed with the other company. In
my over 30 yrs of working I have never
had a company treat me the way this
company has. When you says an employee
is late typically that means someone
is not arriving on their start time.
I came in 20-30 min early every day.
I communicated with my sup at all times,
and went above and beyond as I have
always done. Thats why I have only
had 3 jobs in 20 years. I was really
impressed with the company and the things
they have done to help the people of Africa.
I could not belive what I saw when
I read this statement. After discriminating
against, after paying all the other caucasion
employees 55,00.00 a year starting out, the
max. I see a made up story about
me sleeping on the job. Something
that has never been said untill after
I was terminated, and I went to HR
HR and waged a complaint. Its
so disapointing that no one wants to take

ownership for their mistake in judgement. I did not deserve to be terminated nor did I deserve to be lied on. If there was any inclining of me appearing drowsey and we had any discussion ~~corresponden~~ I am under several doctors care and on several medications and could have provided anything they would have needed. I never had any meetings, coachings, write ups, warnings verbal or written. If I was exibiting a behavior that need to be improved, I was not given the opportunity to improve, it was not treated like others and that is very apparent. To go to such legnths to try to make your wrongs right. Have other employees been written up, coached? Have any other employees been fired company wide for being late for lunch? Are all salaried employees treated like this? We all went to lunch at different times after the first wee sometimes. We dont clock in or out so how can he or she prove that I was late? He didnt really write down or keep up with this in any kind of ways if so then something would have been provided.

I have included anothe e-mail I recived S+D that said the first day (Exibit +) would be virtual. When I spoke to Ryan that morning he acknowledge how that could have been confusing. He said it was not a problem and to get there as soon as I can. I was up and ready to go so I left immeditely and reported to work. I asked again would it be a problem, Ryan told me it was fine and understandable.

Every day after the first day I arrived at work 20-30 minutes to 8am, our start time. We had a bad gnat problem so I took time on my lunch break and my money and purchased apple cider vinegar and cups and got rid of the gnats. I took out trash cleaned break room, desk, etc. Brought drinks for the office because the gnats wer all ove the soda fountian. No one wore mask, no temps were taken. They had the supplies and didnt require anyone to follow the CDC guidlines. Me and Loretta Barnes were the only ones that wore a mask

On September 18 I was not late from lunch. We went at 12:20pm and were due back at 1:20pm. Ryan Clark advised me to help Loretta Dumas with placing an order. Once we were done to go to lunch, take our hour and when we returned he would be in a meeting to text him and he would send us some orders to do. He text us while we were at lunch asking when we would be back but nothing else. Then after the meeting he called us into an office and told us we need to let him know if we were going to be late for a meeting sen a text. We were bowth confused becuase that contridicted what he told us to do.

I just found out that Loretta Dumas was advised by him to apologize to Joyce Latham our V.P. Also another employee Crystal Green, whom completed our order durring the meeting on an esclated case was advised by her supervisor to apologize to Joyce Latham, but I was never advised to do so.

On September 22, 2021 I placed an order at McDonalds thru the app I waited 30 min my food never came out. I contacted Ryan about it he said to wait he would have to decunt it if I was late. I left my food and got back to work at 12:39 was due back at 12:40. Exibit B reflects the text messages.

When I recived the call from Ryan Clark and Joyce Latham to terminate me. The reason I was given was my first day of work, September 18 & 22. I have never been approached, had a meeting, or prior knowledge of this sleeping on the job. It never took place and this is the first I have ever heard this slander and defimation of charcter. I was not sleep in any meeting.

When I spoke with C.J. over West Rock Human Resources. He and I had a legntly conversation on this. At the end of the conversation he said a few things that contridict this statemt.
1) He said that Ryan and Joyce kept asking was it legal
2) He said he was going to appoint someone to deal with the employees not so Joyce wont be as invyled as she is
3) He said he was going back to Joyce to see if he can put me back in my position at my pay rate or he would find me another job in West Rock Coffee
4) He said I should not have been fired

Crystal Green (501)291-6090
Loretta Dumas   (501)690-0843

These are my two co-workers
that can testify under oath and
coroborate the fact I was never
sleep in any meeting. Also that
I was not late from lunch, I
was doing what I was told to do
by Ryan and taking my hour lunch.
So we (me and Loretta) were both
Late for the meeting becuase Ryan
thought we would not be in the
meeting. He told us to text him
when we get back and he would
send us some orders to do. I
have included a letter from bouth
of them.

**From:** Audrey Macek
**Sent:** Friday, September 4, 2020 1:27 PM
**To:** 'jjluv2002@msn.com'
**Subject:** Welcome to S&D Coffee

Hi John,

**Welcome to S&D Coffee and Tea!**

I am **Audrey Macek, Payroll/Benefit Admin.** I have attached a few documents that will need to be filled out and returned in order for me to set you up in our system. You can either bring them on your first day or email them back to me when you have them complete. I have also attached a list of documents that you will need to bring on your first day to complete your I-9 process, you can bring either one document from List A or a combination of documents one from B and one from C.

You will have a virtual new hire orientation on Wednesday, September 9th at 9:00am CST. There will have a Team meeting invite in your S&D email for this day and time.

If you have any questions, please contact me at the number below.

Again, welcome to S&D Coffee.

Have a great weekend,

Audrey



**AUDREY MACEK**
Payroll Benefit Admin
300 Concord Pkwy. S Concord, NC 28027
P: 704.782.3121 x 4349\\ F: 704-720-0945



⟨   (501) 902-9909

Who is this?

4 22 PM

Ryan    4 23 PM

Thursday  September 1  2020

Sorry, I can't talk right now.    12 30 PM

Ran into traffic

Down the street

12:32 PM

Ok. Thanks for letting me know    12 42 PM

Yes I got here at 33 a car stopped on i30

2 44 PM

Tuesday, September 22, 2020

I'm at mcdonalds been waiting on my food

What do I do I paid in the app

12:30 PM

I left

12:39 PM

Thursday, September 24  2020

Can I pick up my check?

11:08 AM

 Exhibit E



LORETTA M. DUMAS



Cancel      **West rock**

Subject: West rock

To Whom it may concern.
On the day that Joyce held a meeting , our supervisor Ryan , had told John and myself to go ahead and go take our hour lunch . No one ever told us what time Joyce was going to be holding the meeting. When I arrived back , like 5 minutes before John  the meeting was being held , Ryan had texted both John and I while we were at lunch and asked what time we left , we both had replied back with a time , but Ryan didn't respond back . After the meeting he called me and John in a room to discuss that we should be here when Joyce holds meetings, but Ryan did not give us a time to be back by for the meeting. I asked ok what should I do , he replied back to me , you need to apologize to Joyce. So I did . I do not recall John sleeping during the meeting.

                    Sincerely, Loretta Dumas

 Reply

# EEOC (INQUIRY) NUMBER: 493-2021-00344

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 09/25/2020

**Reason for Complaint:** Race, Color

**Pay Disparity:**

**Location of Incident:** Arkansas

**Submission (initial inquiry) Date:** 12/01/2020

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:** N/A

**Charge Number:** N/A

**Claim previously filed as complaint with another Agency?** No

**Agency Name:** N/A

**Approximate Date of Filing:** N/A

**Nature of Complaint:** N/A

### INQUIRY OFFICE

**Receiving:** Little Rock Area Office

**Accountable:** Little Rock Area Office

### APPOINTMENT

**Appointment Date and time:** 02/05/2021 03:00 PM US/Central

**Interview Type:** Phone

### APPROXIMATE DEADLINE FOR FILING A CHARGE: 03/25/2021

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:** John, H

**Last Name:** Lovelace

**Street or Mailing Address:** 18 W WINDSOR DRIVE

**Address Line 2:**

**City, State, Zip:** LITTLE ROCK, AR, 72209

**Country:** UNITED STATES OF AMERICA

**Year of Birth:**

**Email Address:** jjluv2002@msn.com

**Home Phone Number:**

**Cell Phone Number:** (501) 913-8083

## RESPONDENT/Employer

**Organization Name:** S & D COFFEE INC

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 300 CONCORD PKWY S

**Address Line 2:**

**City, State, Zip Code:** CONCORD,NC, 28027

**County:** Cabarrus

**Phone Number:** (800) 933-2201

## RESPONDENT CONTACT

**First and Last Name:** Leslie Goodman Eagle

**Email Address:**

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:** 1601 Gregory Street

**Address Line 2:**

**City, State, Zip Code:** 72114

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** M

**Disabled:**  I have a disability

**Are you Hispanic or Latino?**  not hispanic or latino

**Ethnicity:**  Black or African American,

**National Origin:**

## Adverse Action(s)

I was never written up disciplined by the company was not given any notice. Me and another white employee were both told by Ryan our sup to take our lunch hour, he thought we were not included in a meeting. I was not late from lunch they counted me late to the meeting meaning we would not have gotten our lunch hour like all the other employees. Nothing was done to her at all and I was terminated. I spoke with CJ HR rep he agreed and stated he would get me reinstate or find me another job in WestRock coffee, never heard back had been 3 months.

# Supplemental Information

### What Reason(s) were you given for the action taken against you?

N/A

### Was anyone in a similar situation treated the same, better, or worse than you?

N/A

### Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.

N/A

### Please tell us any other information about your experience?

N/A

EEOC Form 161 (11/2020)                 U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   John H. Lovelace, Jr.                          From:   Little Rock Area Office
      18 W Windsor Drive                                     820 Louisiana
      Little Rock, AR 72209                                  Suite 200
                                                             Little Rock, AR 72201

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2021-00344 | Margie Myers, Investigator | (501) 324-6214 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge. |
| X | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| | Other (briefly state) |

NOTICE OF SUIT RIGHTS

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____                04/08/2021
        William A. Cash, Jr.,                   _____
        Area Office Director                         (Date Issued)

Enclosures(s)

cc:   Leslie Eagle
      VP of HR
      CLC Staffing
      PO Box 1628
      Concord, NC 28026

Enclosure with EEOC
Form 161 (11/2020)

UNDER THE LAWS ENFORCED BY THE EEOC

*If you also plan to sue claiming violations of State law, please be aware that time limits and other*

PRIVATE SUIT RIGHTS — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should keep a record of this date.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *issued to you* (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 — not 12/1/10 — in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION — **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.

U.S. Equal Employment Opportunity Commission                                    March 10, 2021

**VIA EEOC Respondent Portal**

Re:     EEOC Charge No. 493-2021-00244
        John H. Lovelace v. S&D Coffee, Inc.

Dear EEOC Investigator:

Please accept this letter as S&D Coffee, Inc.'s position statement[1] in response to the above-referenced charge of discrimination submitted by Mr. John Lovelace.  S&D Coffee, Inc. ("S&D" or "the Company") firmly believes that it did not unlawfully discriminate against Mr. Lovelace in any way.  In support of our position, the Company provides the following factual information.

        A.     Background of the Company

S&D is a national coffee, tea and liquid extract processer that distributes and sells various beverages and related supplies to the institutional food service, convenience store and office coffee service markets throughout the United States.  The Company's headquarters are located in Concord, North Carolina.

B.    **The Company's Commitment to Equal Employment, Free from Harassment, Discrimination, and Retaliation:**

The Company is committed to providing equal opportunity in all areas of employment.  For example, it has implemented and enforced an Equal Employment Opportunity and Non-Harassment Policy, an Affirmative Action Policy, and a Social Accountability in Employment Practices Policy, which prohibit discrimination and harassment against any individual in employment opportunities on the basis of race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation, or any of their characteristic protected by law (see Ex. A – EEO Policies).  These policies apply to all employment practices including hiring, compensation, benefits, promotion, training, and termination.  Pursuant to these policies, employees who believe they have experienced or witnessed any discrimination or harassment are instructed to promptly report the matter to the Human Resources Department.  They are further informed that they do not need to follow any formal chain of command when reporting concerns of discrimination or harassment and that they may bypass anyone in their chain of command at any time to report such concerns.  Furthermore, these policies prohibit retaliation against any individual who reports a concern in good faith.

The Company has also implemented an Open Door Policy that invites employees to raise concerns to anyone with whom they feel comfortable, including but not limited to their immediate supervisor, Department Manager, Department Director, or Human Resources (see Ex. B – Open Door Policy).  This policy further assures employees that problems will be resolved without regard to race, color, religion, sex, national origin, age, disability, or veteran status, and that there will be no retaliation or discrimination against any individual who exercises their rights to report concerns.

[1] All information contained this response is strictly confidential and is provided only for your consideration in the investigation of the above-referenced matter and only upon the condition that tit will be treated as confidential business information between S&D Coffee and the U.S. Equal Employment Opportunity Commission.  This information is provided following our preliminary review of the facts concerning the above-referenced charge and is subject to appropriate future amendments or clarification.  Nothing contained in this letter or any attached or related information submitted by S&D Coffee should be considered a binding admission with regard to any facts, claims, or evidence of any kind, both of which we expressly reserve.

...provided with each of these policies at the start of his employment in September 2020 and expressly acknowledged that he received, reviewed, and would abide by these policies (**see Ex. C – Policy Acknowledgments**).

**C.   Mr. Lovelace's Employment Information:**

**Position:**      Client Experience Specialist
**Location:**      Little Rock, Arkansas
**Employment:**    September 9, 2020 to September 22, 2020

**D.   The Company's Response to Mr. Lovelace's Charge Allegations:**

Mr. Lovelace's Charge allegation centers around discrimination at the time of his termination. Because Mr. Lovelace's Charge does not identify an alleged discriminator, the Company makes some educated assumptions in this Response as to whom Mr. Lovelace was referring based on its thorough investigation.

Mr. Lovelace's Charge alleges that he and a white coworker were both late from lunch and therefore late for a meeting on September 20, 2020. He alleges that he was terminated due to his lateness to this meeting while his white coworker was not terminated.

The Company's investigation revealed that Mr. Lovelace had a pattern of being late. It also revealed that Mr. Lovelace had at least two occurrences of sleeping on the job during his short employment period of...

- Mr. Lovelace was late on his first day of employment on September 9, 2020. He acknowledged receipt of an email from his supervisor which notified him of his 7:50am start time for his first day. He arrived at approximately 8:25am (see **Ex. D – Email Acknowledgement**).
- He was late from lunch, and was also late for a meeting being conducted by the VP of Client Experience, on September 18, 2020. He accepted the 1:00pm meeting invite sent by the VP of Client Experience yet arrived at approximately 1:23pm. (see **Ex. E – Invite Acceptance**). Please note that the date of the meeting was actually September 18, 2020 instead of September 20, 2020 as noted in the Charge.
- He was also late returning from lunch on September 22, 2020 and arrived approximately 5-10 ...
- There were at least two occurrences (September 9, 2020 and September 11, 2020) of Mr. Lovelace falling asleep during meetings. This was witnessed by two Client Experience Leads, a coworker and by a company Senior Vice President.

Mr. Lovelace was terminated on September 22, 2020 for a combination of a pattern of being late and for sleeping on the job. The decision to terminate Mr. Lovelace was made by his supervisor, Ryan Gish and by Joyce Latham, VP of Client Experience. Please note that the date of the termination was September 22, 2020 instead of September 23, 2020 as noted in the Charge.

While Mr. Lovelace does not identify the "white coworker" mentioned in his charge, the Company makes an educated assumption in this Response as to whom Mr. Lovelace was referring based on its thorough investigation. While the "white coworker" was not sanctioned for being late, this coworker did not have a pattern of being late. The instance of being late on September 18, 2020 was the worker's first occurrence of being late.

Most importantly, Mr. Lovelace was not terminated solely due to returning late from lunch with a "white coworker" and being late to a meeting on September 18, 2020.  The decision to terminate Mr. Lovelace came after his third occurrence of being late on September 22, 2020 and two occurrences of sleeping on the job. The termination decision was made without consideration of his Mr. Lovelace's race.

### E.  Conclusion – Mr. Lovelace's Meritless Charge Should be Dismissed:

S&D did not discriminate against Mr. Lovelace.  Mr. Lovelace was terminated for legitimate, non-discriminatory reasons – his pattern of being late, coupled with sleeping on the job.  As a result, S&D respectfully requests that this Charge be dismissed as meritless.

We trust this information is sufficient for your review of this Charge.  Should you have any additional questions or wish to discuss this matter further, please do not hesitate to contact me.

Sincerely,

S&D Coffee, Inc.

Leslie G. Eagle

Enclosures – Exhibits A through E



**POLICY NUMBER: 01-100**

**DATED ISSUED: 2005, revised 5/22/2013**

**SECTION:** Employee Relations
**SUBJECT:** Equal Employment Opportunity and Non-Harassment Policy

**Applicability:**

All Company employees.

**Purpose:**

To set forth the Company's policy against unlawful discrimination and harassment and to establish guidelines for handling reports related to potential discrimination or harassment.

**Policy:**

**Equal Employment Opportunity**

It is S&D Coffee's policy to provide equal employment opportunity to all employees and applicants for employment without regard to unlawful consideration of race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable federal, state or local law. This policy applies to all terms and conditions of employment including, but not limited to, recruitment, hiring, placement, promotion, training, discipline, termination, layoff, recall, transfer, leaves of absence, compensation and benefits.

**Non-Harassment**

S&D Coffee also expressly prohibits any form of employee harassment based on race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law. The Company prohibits such harassment by all employees and others associated with S&D Coffee, and the Company does not condone such conduct by business partners, clients, vendors or other third parties with whom the Company has business dealings.

Harassment may include, but is not limited to:

    A. Verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his or her race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law, or that of an individual's relatives, friends or associates;

    B. Epithets, insults, jokes, slurs, negative stereotyping or threatening, intimidating or hostile acts that relate to race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law; or

    C. The placement, dissemination or circulation in the workplace of any written or graphic material (in hard copy or electronic form) that denigrates or shows hostility or aversion toward an individual or group because of race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law.

Harassment may also include unwelcome sexual advances, unwelcome requests for sexual favors and other unwelcome conduct of a sexual nature if:

A.  Submission to or tolerance of such conduct is made either an explicit or implicit condition of employment;

B.  Submission to or tolerance or rejection of such conduct is used as a basis for an employment decision affecting an employee;

C.  The conduct has the purpose or effect of substantially interfering with an employee's performance; or

D.  The conduct creates an intimidating, hostile or offensive work environment.

If an employee has welcomed sexual advances or other harassing conduct (whether sexual or otherwise) by active participation in or encouragement of such activity, he or she should specifically inform the alleged harasser if such conduct is no longer welcome in order for any subsequent conduct to be deemed unwelcome.  However, failure to give such notice in no way prevents the Company from taking appropriate disciplinary action against the alleged harasser for his or her behavior.

Further examples of the types of conduct expressly prohibited by this policy include, but are not limited to, the following:

- Sexually-suggestive touching, including rubbing or massaging an individual's neck or shoulders, stroking an individual's hair, or brushing against an individual's body.
- Grabbing, groping, pinching, kissing or fondling.
- Lewd, vulgar, off-color or sexually oriented comments or jokes.
- Jokes or offensive comments based on race, color, religion, sex, national origin, age, disability, veteran status, or other protected categories.
- Foul or obscene language.
- Leering, staring or stalking.
- Suggestive or sexually explicit posters, calendars, photographs, graffiti or cartoons.
- Unwanted or offensive letters or poems.
- Inappropriate, sexual or insulting gestures or sounds.
- Offensive e-mails, voice-mails or instant messaging.
- Sexually oriented or explicit remarks, including written or oral references to sexual conduct or gossip regarding an individual's or your own sex life, body, or sexual activities.
- Questions about an individual's sex life or experiences.
- Repeated requests for dates.
- Sexual favors in return for employment rewards, or threats if sexual favors are not provided.

## Workplace Dating

In furtherance of this policy, S&D Coffee discourages supervisors and managers from dating any subordinate. Such relationships can be disruptive to the work environment, create a conflict of interest or the appearance of a conflict of interest, and lead to charges of favoritism, discrimination, and claims of indirect sexual harassment. While S&D Coffee recognizes that certain states have enacted laws prohibiting employers from interfering with certain lawful off-duty conduct of their employees, the conduct prohibited by this policy is *not* off-duty conduct, but conduct which directly impacts the work environment in a negative manner.

In this connection, S&D Coffee reserves the right to take whatever action is appropriate, in its discretion, to protect the Company's interests in the event of a violation of this or any other Company policy consistent with applicable law. This may include reassignment of one or more of the employees involved.

Employees who become involved in a relationship with an immediate subordinate, or anyone else within their "chain of command," are required to notify their superior and Human Resources so that the matter can be reviewed and appropriate action taken, where necessary.

## Reporting Concerns

1. <u>Employee Reports</u>

   Any employee who believes that he or she has been subjected to inappropriate behavior that violates this policy should promptly report the matter to the Human Resources Department.

2. Reporting By Other Employees

   Any employee who believes that another employee is being subjected to unlawful discrimination or harassment should promptly report such conduct to the Human Resources Department.  In addition, any employee receiving a report regarding potentially unlawful discrimination or harassment should immediately inform the Human Resources Department.

3. Alternative Reporting Options

   There is no need for any employee to follow any formal chain of command when reporting, discussing or expressing any issue or concern regarding alleged discrimination or harassment.  Indeed, employees may bypass anyone in their direct chain of command and report, discuss or express any issue or concern with the Human Resources Department at any time.  In addition, if an employee is directly supervised by an individual in the human resources department, such employee may bypass anyone in their direct chain of command and report, discuss or express any issue or concern with  the Director of Sales Administration at any time.

## Investigative Process

All reports received under this policy will be reviewed and/or investigated as deemed appropriate by the Company, and appropriate action will be taken to address the matter.  During the investigative process, information will be shared only on a need to know basis so as to be sensitive to the privacy concerns of all employees involved.

All employees raising a complaint and all persons accused of violating this policy shall fully cooperate with any investigation, including supplying written statements if requested.  In addition, all other persons associated with the Company shall fully cooperate with any such investigation if and to the extent requested.

## Protection Against Retaliation

The Company prohibits retaliation against any individual who, in good faith, makes a complaint under this policy or participates in an investigation under this policy.  Retaliation is a violation of this policy and should be reported in the same manner as a complaint of discrimination or harassment.  Any attempt to coerce, intimidate or retaliate against anyone who in good faith complains of a violation of this policy or who in good faith participates in an investigation under this policy will not be tolerated.  If S&D Coffee determines that retaliation has occurred, the Company will take appropriate disciplinary action, up to and including termination.

## False Accusations and Information

The Company recognizes that false accusations under this policy and the providing of false information in an investigation can have a serious effect on innocent persons.  Thus, while the Company encourages the reporting of unwelcome conduct perceived to be a violation of this policy, if the Company determines that a person has provided false information in making a complaint or as part of an investigation under this policy, the Company will take appropriate disciplinary action, up to and including termination.



POLICY NUMBER: 01-181

**DATED ISSUED:  2005, revised 5/23/2013**

---

**SECTION:   Employee Relations**
**SUBJECT:   Affirmative Action Policy**

---

**Applicability:**

All Company establishments.

**Purpose:**

To advance the Company's commitment to equal employment opportunity and to comply with its obligations as a federal contractor.

**Policy:**

As set forth in our Equal Employment Opportunity and Non-Harassment Policy, S&D Coffee is committed to treating applicants and employees in all aspects of employment without regard to unlawful discrimination or harassment.  To further this commitment, and as required by federal law, the Company has developed an affirmative action plan ("AAP") for women, minorities, disabled individuals and covered veterans.

The Company's AAP has been prepared in conformity with Executive Order 11246, the Rehabilitation Act of 1973, as amended, the Vietnam Era Veteran's Readjustment Act of 1974, as amended, and the implementing regulations of the Office of Federal Contract Compliance Programs (OFCCP).  The AAP is designed to provide guidance to management with respect to the Company's commitment to full implementation of its affirmative action obligations under federal law.  If desired, employees and applicants may review the Company's written AAP for disabled individuals and covered veterans, which is available in the Human Resources Department during regular business hours.

The Company's AAP includes, without limitation, the following commitments:

1.   To continue to provide equal employment opportunity to all qualified persons, and to continue to recruit, hire, train, promote, and compensate persons in all jobs without unlawful consideration of race, color, religion, sex, national origin, age, disability, covered veteran status, sexual orientation, or any other status protected by applicable law.

2.   To identify and analyze all areas of the Company's employment process so as to further the principles of equal employment opportunity.  Specific examples include:

   a.   Recruitment and Selection.   The recruitment and hiring of all personnel is to be accomplished without unlawful discrimination against any individual with regard to race, color, religion, sex, national origin, age, disability, covered veteran status, sexual orientation, or any other status protected by applicable law.  The Company will contact known sources of potential minority, female, disabled and veteran applicants so as to maximize the participation of such applicants.

     b.   Promotion.  Individuals will continue to be upgraded and promoted on the basis of their abilities, skills and experience. The Company will undertake good faith efforts to ensure that minority and female employees, disabled individuals, and covered veterans who are qualified (as well as those who become qualified through training) are considered for promotion. In making promotion decisions, those managers directly involved and other applicable personnel will use good faith efforts to ensure that promotions are based on valid occupational qualifications.

     c.   Transfers.  When vacancies occur, appropriate management personnel will make good faith efforts to effect transfers of qualified minority and female employees, disabled individuals, and covered veterans into all applicable areas throughout the organization.

     d.   Terminations.  Should reductions in the Company's workforce become necessary, they will be based on nondiscriminatory factors. The Company will also make good faith efforts to ensure that minorities and women, disabled individuals and covered veterans are treated in a nondiscriminatory manner with respect to termination.

3.   To administer personnel actions in areas such as compensation, discipline, transfers, layoffs, recalls, and Company-sponsored education, training, tuition assistance and social / recreational programs in a nondiscriminatory manner consistent with the OFCCP's regulations and other federal and state equal employment laws.

4.   To administer the Company's employee benefit plans, including but not limited to any retirement, pension, disability and insurance benefits, in a nondiscriminatory manner consistent with the OFCCP's regulations and other federal and state equal employment laws.



POLICY NUMBER: 01-114

DATED ISSUED: 05/23/2013, revised 11/1/2018

**SECTION:  Employee Relations**

SUBJECT:  Social Accountability in Employment Practices Policy

**Applicability:**

This policy is ongoing and applies to all S&D work sites.  Every manager, employee, contractor and temporary staff member has a responsibility under the policy.

**Purpose:**

This policy affirms S&D Coffee and Tea's commitment to adopt fair employment practices.  This employment practices policy is informed by relevant standards of Social Accountability 8000 ("SA8000"), specifically those relating to occupational health and safety, anti-discrimination, discipline and complaint practices, working hours and remuneration and adherence to all federal, state, and local laws.

**Policy:**

The company commits to informing all employees of its policy and position on the SA8000 standard.  All employees will be made aware of this policy.  Going forward all new employees will be trained on this policy in new employee orientation.  Periodically throughout the year the Company will reaffirm its commitment to this policy through employee communications such as emails, postings, the Company Newsletter, and payroll stuffers.

The 9 identified areas are:
1. Child Labor
2. Forced, Compulsory Labor and Human Trafficking
3. Health & Safety
4. Freedom of Association / Right To Collective Bargaining
5. Discrimination
6. Disciplinary Practices
7. Working Hours
8. Remuneration / Compensation
9. Management Systems

**Child Labor:**

S&D Coffee and Tea does not utilize child labor and it supports the SA8000 standard and guidelines on child labor.  Furthermore, S&D does not employ individuals under the age of 18.

**Forced & Compulsory Labor**

The company does not support forced or compulsory labor including human trafficking and/or slavery. ~~We unequivocally support the human rights of all our employees.~~ The company never withholds any personnel's salary, benefits or documents in order to force such personnel to continue working with the company. ~~Personnel have the right to terminate their employment at any time, provided reasonable notice is provided.~~

**Health and Safety:**

S&D Coffee and Tea is committed to the continuous improvement of the health and safety for its employees. ~~Security guards at the Headquarters campus are not armed and are present for protection of S&D property.~~

**Freedom of Association & Right to Collective Bargaining:**

~~S&D Coffee and Tea recognizes its employees' rights to join trade unions of their choice and to collectively~~ bargain. While the company recognizes this right, it also believes that it fosters a positive employment ~~environment and that any group that would come between the company and the employees would not be~~ in the best interests of any involved.   The Company is committed to providing open lines of ~~communication to management and has developed an open door policy for solving problems that includes~~ all levels off management including the CEO.

**Discrimination:**

In accordance with our Equal Employment/Non Harassment and Affirmative Action Policies, the ~~Company does not engage in or support any type of unlawful discriminating practices, nor does it tolerate~~ unlawful harassment in any form to occur.   Employees are informed of our Equal Employment/Non Harassment Policy   during new employee orientation and during new hire signup.

~~Disciplinary Practices:~~

~~S&D Coffee and Tea has a defined disciplinary process. This process is explained to all employees in new~~ ~~employee orientation.   The company does not and will not engage in or support the use of corporal~~ punishment, mental or physical coercion, or verbal abuse.   Employees are trained on the progressive ~~disciplinary policy in new employee orientation and during new hire signup.~~

**Working Hours:**

~~The Company complies with all applicable federal, state, and local laws concerning working hours.   Our~~ normal workweek is Monday through Friday and is 40 hours in length.   Overtime is encouraged to keep ~~the company productive and competitive in the marketplace.   Employees are never forced, coerced, or~~ pressured to work more hours than as permitted under applicable federal, state and local laws. ~~Occasionally the company will offer additional financial incentives above and beyond time and a half and double time pay as an incentive to work additional hours.~~

**Remuneration/Compensation:**

S&P Office and Tea ensures that the wages paid for a standard workweek always at the very least meet the federal legal standard (Fair Labor Standards Act or FLSA). Time worked above 40 hours is paid at time and a half and time worked on Sunday is paid at double time, for non-exempt FLSA workers. All time worked on a holiday is paid at double time in addition to receiving holiday pay. All employees are provided with a biweekly pay record explaining deductions taken, hours worked, pay computations, and taxes withheld. The company will never utilize payroll deductions for disciplinary purposes. The company ensures that all wages paid are in a manner that is convenient and safe for all employees.

## Management Systems:

### Commitment

S&P Office and Tea affirms that it is committed to conform to all requirements of this policy in addition to all Federal, State, and Local employment laws. Furthermore, the Company is committed to the continuous improvement of its personnel policies. All personnel policies and this policy are available for review in the Human Resources department. This policy is provided to and reviewed with each employee during new employee orientation and during new hire sign up.

### Review

Executive management commits to review the adequacy, suitability, and effectiveness of this policy at least once per year.

### Management Representative

The Company designates the Director of Human Resources as its representative to maintain this policy and to ensure that the requirements are met.

### Employee Committees

Established safety committees made up of hourly employees who volunteer to participate have agreed to consider matters relating to the areas outlined in this policy and to communicate any concerns to members of management.



**POLICY NUMBER: 01-105**

**DATED ISSUED: 01/01/2006, revised 08/01/2010**
**SUPERSEDES: Open Door Policy, 07/30/1986**

---

**SECTION:  Employee Relations**
**SUBJECT:  Open Door Policy**

---

**Applicability:**

All S&D Coffee Employees.

**Purpose:**

To provide an avenue for open and free discussion of problems.

**Policy:**

It is S&D's desire to:

- listen to employee problems and to provide an unbiased solution, which is based on good sound business and ethical practice.
- guarantee that problems are resolved without regard to race, color, religion, sex, national origin, age, disability or veteran status.
- assure that there will be no retaliation or discrimination against any employee for exercising his right under this Policy. Anyone, regardless of position, who is found to have retaliated or discriminated against an employee for presenting a complaint, will be subject to discipline.

**Process:**

The following process is usually the best to resolve most situations. If the employee is not satisfied with the resolution at each step, he may proceed to the next step in the process.

1. Talk with your immediate Supervisor about the situation.
2. Talk with your Department Manager.
3. Talk with your Department Director.
4. Talk with Human Resources.

This is a suggested method of proceeding. But the door is always open. Feel free to talk with the person whom you think is in the best position to help you. Usually a supervisor is able to handle over 90% of employee issues. That is why we suggest you start there. But your supervisor cannot handle every issue. For instance, suppose your problem involves your benefits. In that case, it makes more sense for you to go straight to Human Resources, because that is the department that handles benefits.

The management of the Company may not always be able to resolve an issue immediately. In this event, you will be given an answer/resolution within three (3) working days, or if it is going to take longer, you will be given an estimate of how long.

**Note:  S&D Coffee believes that the above process provides every employee an opportunity to solve any problems, which might arise. If you have any questions, please feel free to ask your supervisor or Human Resources.**



POLICY NUMBER: 01-100
DATED ISSUED: 2005, revised 5/22/2013

SECTION: Employee Relations
SUBJECT: Equal Employment Opportunity and Non-Harassment Policy

Applicability.

All Company employees.

Purpose  To set forth the Company's policy against unlawful discrimination and harassment and to establish guidelines for handling reports related to potential discrimination or harassment.

Policy:

Equal Employment Opportunity

It is S&D Coffee, Inc. policy to provide equal employment opportunity to all employees and applicants for employment without regard to unlawful consideration of race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable federal, state or local law. This policy applies to all terms and conditions of employment including, but not limited to, recruitment, hiring, placement, promotion, training, discipline, termination, layoff, recall, transfer, leaves of absence, compensation and benefits.

Non-Harassment

S&D Coffee also expressly prohibits any form of employee harassment based on race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law. The Company prohibits such harassment by all employees and others associated with S&D Coffee, and the Company does not condone such conduct by business partners, clients, vendors or other third parties with whom the Company has business dealings.

Harassment may include, but is not limited to:

A. Verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his or her race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law, or that of an individual's relatives, friends or associates;

B. Epithets, insults, jokes, slurs, negative stereotyping or threatening, intimidating or hostile acts that relate to race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law; or

C. The placement, dissemination or circulation in the workplace of any written or graphic material (in hard copy or electronic form) that denigrates or shows hostility or aversion toward an individual or group because of race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation or any other status protected by applicable law.

Harassment may also include unwelcome sexual advances, unwelcome requests for sexual favors and other unwelcome conduct of a sexual nature if:

A. Submission to or tolerance of such conduct is made either an explicit or implicit condition of employment

B. Submission to or tolerance or rejection of such conduct is used as a basis for an employment decision affecting an employee;

C. The conduct has the purpose or effect of substantially interfering with an employee's performance, or

D. The conduct creates an intimidating, hostile or offensive work environment

If an employee has welcomed sexual advances or other harassing conduct (whether sexual or otherwise) by active participation in or encouragement of such activity, he or she should specifically inform the alleged harasser if such conduct is no longer welcome in order for any subsequent conduct to be deemed unwelcome. However, failure to give such notice in no way prevents the Company from taking appropriate disciplinary action against the alleged harasser for his or her behavior

Further examples of the types of conduct expressly prohibited by this policy include, but are not limited to, the following

- Sexually-suggestive touching, including rubbing or massaging an individual's neck or shoulders, stroking an individual's hair, or brushing against an individual's body.
- Grabbing, groping, pinching, kissing or fondling.
- Lewd, vulgar, off-color or sexually oriented comments or jokes.
- Jokes or offensive comments based on race, color, religion, sex, national origin, age, disability, veteran status, or other protected categories.
- Foul or obscene language.
- Leering, staring or stalking.
- Suggestive or sexually explicit posters, calendars, photographs, graffiti or cartoons.
- Unwanted or offensive letters or poems.
- Inappropriate, sexual or insulting gestures or sounds.
- Offensive e-mails, voice-mails or instant messaging.
- Sexually oriented of explicit remarks, including written or oral references to sexual conduct or gossip regarding an individual's or your own sex life, body, or sexual activities.
- Questions about an individual's sex life or experiences.
- Repeated requests for dates.
- Sexual favors in return for employment rewards, or threats if sexual favors are not provided.

Workplace Dating

In furtherance of this policy, S&D Coffee discourages supervisors and managers from dating any subordinate. Such relationships can be disruptive to the work environment, create a conflict of interest or the appearance of a conflict of interest, and lead to charges of favoritism, discrimination, and claims of indirect sexual harassment. While S&D Coffee recognizes that certain states have enacted laws prohibiting employers from interfering with certain lawful off-duty conduct of their employees, the conduct prohibited by this policy is not off-duty conduct, but conduct which directly impacts the work environment in a negative manner.

In this connection, S&D Coffee reserves the right to take whatever action is appropriate, in its discretion, to protect the Company's interests in the event of a violation of this or any other Company policy consistent with applicable law. This may include reassignment of one or more of the employees involved. Employees who become involved in a relationship with an immediate subordinate, or anyone else within their "chain of command," are required to notify their superior and Human Resources so that the matter can be reviewed and appropriate action taken, where necessary.

Reporting Concerns

1. Employee Reports
Any employee who believes that he or she has been subjected to inappropriate behavior that violates this policy should promptly report the matter to the Human Resources Department.

2. Reporting By Other Employees
Any employee who believes that another employee is being subjected to unlawful discrimination or harassment should promptly report such conduct to the Human Resources Department. In addition, any employee receiving a report regarding potentially unlawful discrimination or harassment should immediately inform the Human Resources Department.

3. Alternative Reporting Options
There is no need for any employee to follow any formal chain of command when reporting, discussing or expressing any issue or concern regarding alleged discrimination or harassment. Indeed, employees are encouraged to bypass anyone in their direct chain of command and report, discuss or express any issue or concern with the Human Resources Department at any time. In addition, if an employee is directly supervised by an individual in the human resources department, such employee may bypass anyone in their direct chain of command and report, discuss or express any issue or concern with the Director of Sales Administration at any time.

Investigative Process

All reports received under this policy will be reviewed and/or investigated as deemed appropriate by the Company, and appropriate action will be taken to address the matter. During the investigative process, information will be shared only on a need to know basis so as to be sensitive to the privacy concerns of all employees involved.

All employees raising a complaint and all persons accused of violating this policy shall fully cooperate with any investigation, including supplying written statements if requested. In addition, all

*Page 3b of Unboarding Documentation* (handwritten)

other persons associated with the Company shall fully cooperate with any such investigation if and to the extent requested.

Protection Against Retaliation

The Company prohibits retaliation against any individual who, in good faith, makes a complaint under this policy or participates in an investigation under this policy. Retaliation is a violation of this policy and should be reported in the same manner as a complaint of discrimination or harassment. Any attempt to coerce, intimidate or retaliate against anyone who in good faith complains of a violation of this policy or who in good faith participates in an investigation under this policy will not be tolerated. If S&D Coffee determines that retaliation has occurred, the Company will take appropriate disciplinary action, up to and including termination.

False Accusations and Information

The Company recognizes that false accusations under this policy and the providing of false information in an investigation can have a serious effect on innocent persons. Thus, while the Company encourages the reporting of unwelcome conduct perceived to be a violation of this policy, if the Company determines that a person has provided false information in making a complaint or as part of an investigation under this policy, the Company will take appropriate disciplinary action, up to and including termination.

I have read and agree to the above policy. .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     Yes

Hourly Affirmative Action Policy



POLICY NUMBER: 01–101
DATED ISSUED: 2005, revised 5/23/2013

SECTION: Employee Relations
SUBJECT: Affirmative Action Policy

Applicability:

All Company establishments.

Purpose:

To advance the Company's commitment to equal employment opportunity and to comply with its obligations as a federal contractor.

Policy:

As set forth in our Equal Employment Opportunity and Non-Harassment Policy, S&D Coffee is committed to treating applicants and employees in all aspects of employment without regard to unlawful discrimination or harassment. To further this commitment, and as required by federal law, the Company has developed an affirmative action plan ("AAP") for women, minorities, disabled individuals and covered veterans.

The Company's AAP has been prepared in conformity with Executive Order 11246, the Rehabilitation Act of 1973, as amended, the Vietnam Era Veteran's Readjustment Act of 1974, as amended, and the implementing regulations of the Office of Federal Contract Compliance Programs (OFCCP). The AAP is designed to provide guidance to management with respect to the Company's commitment to full implementation of its affirmative action obligations under federal law. If desired, employees and applicants may review the Company's written AAP for disabled individuals and covered veterans, which is available in the Human Resources Department during regular business hours.

The Company's AAP includes, without limitation, the following commitments:

1. To continue to provide equal employment opportunity to all qualified persons, and to continue to recruit, hire, train, promote, and compensate persons in all jobs without unlawful consideration of race, color, religion, sex, national origin, age, disability, covered veteran status, sexual orientation, or any other status protected by applicable law.

2. To identify and analyze all areas of the Company's employment process so as to further the principles of equal employment opportunity. Specific examples include:

    a. Recruitment and Selection. The recruitment and hiring of all personnel is to be accomplished without unlawful discrimination against any individual with regard to race, color, religion, sex, national origin, age, disability, covered veteran status, sexual orientation, or any other status protected by applicable law. The Company will contact known sources of potential minority, female, disabled and veteran applicants so as to maximize the participation of such applicants.

    b. Promotion. Individuals will continue to be upgraded and promoted on the basis of their abilities, skills and experience. The Company will undertake good faith efforts to ensure that minority and female employees, disabled individuals, and covered veterans who are qualified (as well as those who become qualified through training) are considered for promotion. In making promotion decisions, those managers directly involved and other applicable personnel will use good faith efforts to ensure that promotions are based on valid occupational qualifications.

    c. Transfers. When vacancies occur, appropriate management personnel will make good faith efforts to effect transfers of qualified minority and female employees, disabled individuals, and covered veterans into all applicable areas throughout the organization.

    d. Terminations. Should reductions in the Company's workforce become necessary, they will be based on nondiscriminatory factors. The Company will also make good faith efforts to ensure that minorities and women, disabled individuals and covered veterans are treated in a nondiscriminatory manner with respect to termination.

3. To administer personnel actions in areas such as compensation, discipline, transfers, layoffs, recalls, and Company-sponsored education, training, tuition assistance and social / recreational programs in a nondiscriminatory manner consistent with the OFCCP's regulations and other federal and state equal employment laws.

4. To administer the Company's employee benefit plans, including but not limited to any retirement, pension, disability and insurance benefits, in a nondiscriminatory manner consistent with the OFCCP's regulations and other federal and state equal employment laws.

I have read and agree to the above policy. .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     Yes

Hourly Corporate Conduct Corrective Action Policy
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



POLICY NUMBER: 01–102
DATED ISSUED: 06/10/2004, rev. 08/01/2010

SECTION: Employee Relations
SUBJECT: Corporate Conduct/Corrective Action

Applicability:

This policy affects all employees of S&D Coffee and applies to all Company property which includes owned facilities, leased space, parking lots, Company vehicles and personal vehicles used for Company business.

Policy:

The Corporation expects all employees to observe "common sense" rules of good conduct towards coworkers, customers and suppliers alike. However, from time to time incidents occur which disrupt the orderly and smooth functions of our day-to-day operations. Our Corporate Conduct/Corrective Action Procedure intends to recognize and correct any performance deficiencies associated with these incidents so that they do not reoccur.

The following includes actions and behavior of such a serious nature that a first occurrence may warrant termination without prior warning. This list is not intended to be all inclusive:

(1) Insubordination, i.e. refusal to obey a direct work order or gross disrespect toward management. (Any work order to do something illegal, unsafe, or unethical should be brought to the immediate attention of a member of the Human Resource Department.)

I, John Lovelace, hereby acknowledge that I have been presented and understand the above mentioned documents. I also acknowledge that questions related to these documents should be discussed with Human Resources.

Please enter your first and last name as it appears in the above paragraph.

John H Lovelace
Accepted

Date Signed :

Aug 31, 2020 02:03 am

**Leslie Eagle**

| | |
|---|---|
| **From:** | Ryan Ciak |
| **Sent:** | Wednesday, February 24, 2021 9:26 AM |
| **To:** | Leslie Eagle |
| **Subject:** | FW: Welcome to Westrock Coffee |

FYI

Best Regards,

**Ryan Ciak**
**Client Experience Leader**
**C: 501.902.9909 / O: 501.500.8142**



**From:** Ryan Ciak
**Sent:** Wednesday, September 2, 2020 1:49 PM
**To:** johnlovelace44_6yr@indeedemail.com
**Subject:** Welcome to Westrock Coffee

Good Afternoon John Lovelace,

Welcome to the Client Experience Team (CET)!  We are so excited for you to join us on Wednesday, September 9th for your first day of employment with Westrock Coffee!  You are officially a part of our inaugural CET class!

I wanted to reach out and share a few things, in advance of your first day:

- I am your direct Supervisor and my contact information is included in the signature block below.
- Our temporary home is located at 1601 Gregory Street in North Little Rock.
- Training will be facilitated from 8:00am to 5:00pm, each day. Please plan to arrive by 7:50 am. We will begin training at 8:00 am.
- Dress in casual attire (i.e. work appropriate jeans, tennis shoes, collared shirt).  Casual attire is permissible while we are working at our temporary home on Gregory Street.
- Feel free to bring any personal supplies you need to help you be successful. Binders, paper, pens, highlighters, etc. will be provided.
- Snacks and lunch will be provided, September 9th-11th.  Please let us know of any dietary concerns as soon as possible.

**Also, please remember to bring the identification items required to complete the I9 form (valid driver's license and Social Security Card or U.S. Passport) and your S&D Benefits binder (if you have received it).**

Please feel free to reach out with any other questions or concerns.  We look forward to seeing you, bright and early, on Wednesday, September 9, 2020!

 

**Ryan Ciak**
Client Experience Leader
C: 501.902.9909

**From:** Ryan Sisk

Sent: WEDNESDAY, FEBRUARY 24, 2021 11:45 AM

**To:** Leslie Eagle

Subject: FW: Welcome to Westrock Coffee response from John Loveless

FYI

BEST REGARDS

Ryan Sisk

**Client Experience Leader**

C: 501-993-3320 / O: 501-588-0143



**From:** John Loveless <johnloveless44_hvr@indeedemail.com>
**Sent:** Wednesday, September 2, 2020 2:29 PM
**To:** Ryan Sisk <sisk r@sdcoffee.com>
**Subject:** Welcome to Westrock Coffee

Thank you! I am very excited to join the team!

By replying or using an indeedemail.com email address, you agree that this email will be processed and analyzed according to the Indeed Cookie Policy,

**Leslie Eagle**

| | |
|---|---|
| **From:** | Joyce Latham |
| **Sent:** | Wednesday, February 24, 2021 9:31 AM |
| **To:** | Leslie Eagle |
| **Subject:** | John Lovelace - Meeting 9/18 |

Screen prints of 9-18 meeting.



The following responses to this meeting have been received:

| Name | Attendance | Response |
|---|---|---|
| Joyce Latham | Meeting Organizer | None |
| Kim Edwards | Required Attendee | Accepted |
| Kanedra Slaton | Required Attendee | Accepted |
| Rissa Clark | Required Attendee | Accepted |
| Reagan Spilling | Required Attendee | |
| Megan Smallwood | Required Attendee | None |
| Loretta Dunns | Required Attendee | Accepted |
| John Lovelace | Required Attendee | Accepted |
| Crystal Hampton | Required Attendee | Accepted |
| Josh Freeman | Required Attendee | |
| Jennifer Giddinas | Required Attendee | Accepted |
| Haley Stancil | Required Attendee | None |

Add a name here

**Joyce Latham**
VP Client Experience
D: (501) 404-7201
C: (501) 514-0067
atham1@sndcoffee.com

